# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

FEDERATION OF STATE  §
MASSAGE THERAPY BOARDS,  §
      Plaintiff,  §
        §
v.  §         CASE NO. 4:17-cv-2936
        §
MENDEZ MASTER TRAINING  §
CENTER, INC., *et al.*,  §
      Defendants.  §

## MEMORANDUM AND ORDER

Pending before the Court in this intellectual property dispute are two motions to dismiss. The first motion is Defendants MMTC Texas, Inc.'s ("MMTC Texas) and Tesla Shen Mendez's ("T. Mendez") Motion to Dismiss and Supporting Authorities (the "12(b)(6) Motion") [Doc. # 13], wherein MMTC and T. Mendez argue that all claims alleged in Plaintiff Federation of State Massage Therapy Boards' Complaint [Doc. # 1] should be dismissed for failure to state a claim pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure. The second motion is Defendants Jorge Mendez's ("J. Mendez") and Mendez Master Training Center, Inc.'s ("MMTC") Motion to Dismiss and Brief in Support (the "Jurisdiction Motion," and, together with the 12(b)(6) Motion, the "Dismissal Motions") [Doc. # 14]. In the Jurisdiction Motion, Defendants J. Mendez and MMTC contend that the Court lacks personal jurisdiction over them and, as a

result, all claims in the Complaint against them should be dismissed.[1]  Plaintiff filed timely responses to the Dismissal Motions, to which Defendants filed a single reply.  *See* Plaintiff's Opposition to Defendants MMTC Texas's and T. Mendez's Motion to Dismiss (the "12(b)(6) Response") [Doc. # 15]; Plaintiff's Opposition to Defendants J. Mendez's and MMTC's Motion to Dismiss (the "Jurisdiction Response") [Doc. # 16]; and Defendants' Response to Plaintiff's Opposition to Motion to Dismiss, with Supporting Authorities [Doc. # 17].  The Dismissal Motions are now ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all appropriate matters of record, the Court concludes that the Dismissal Motions should be **denied**, but that Plaintiff must file and amended complaint.

## I.   BACKGROUND

Plaintiff develops and administers the national licensing examination that assesses competence in massage and bodywork in the United States and its territories, known as the Massage & Bodywork Licensing Exam ("MBLEx").  According to Plaintiff, its MBLEx questions are protected by U.S. copyright law and are registered with the U.S. Copyright office.  MBLEx results are used by

---

[1]     In the Jurisdiction Motion, Defendants J. Mendez and MMTC also adopt, verbatim, the arguments contained in the 12(b)(6) Motion as alternative grounds to dismiss the Complaint in its entirety.  Jurisdiction Motion [Doc. # 14], at ECF 6-20.

licensing agencies throughout the United State, including in Texas, when evaluating applicants for licensure. These jurisdictions require applicants to obtain a passing result on the MBLEx to obtain a license to practice massage and bodywork.

The group of Defendants in this case is comprised of two corporate entities and several individuals.[2] The corporate Defendants are MMTC and MMTC Texas. MMTC is a California corporation with its principal place of business in Torrance, California. MMTC Texas is a Texas corporation with its principal place of business in Houston, Texas. Plaintiff alleges in the Complaint that MMTC has "business operations in Texas" at the same address as MMTC Texas. Individual Defendants T. Mendez and J. Mendez are residents of Texas and California, respectively, and are each alleged to be the "owner and operator" of both MMTC and MMTC Texas.

The core of Plaintiff's Complaint is that Defendants T. Mendez and J Mendez, through their businesses MMTC and MMTC Texas and with the assistance of the other named Defendants, have impermissibly obtained and reproduced MBLEx questions, including the answers thereto, and sold them to

---

[2]     Individual Defendants Hua Sun, a California resident, David Lin, a California resident, and "John Does 1-5," residents of Texas or California, are not parties to either of the Dismissal Motions.

prospective MBLEx takers. As a result, Plaintiff argues that Defendants have undermined the integrity of the MBLEx itself and the massage and bodyworks licensing processes that rely on it. Plaintiff contends further than Defendants' publication of its confidential MBLEx questions has forced it to retire hundreds of questions from use in the examination and incur significant costs to develop new, uncompromised exam material.

## II.  ANALYSIS

### A.  Personal Jurisdiction

As a threshold issue, Defendants MMTC and J. Mendez have moved to dismiss the Complaint in its entirety on the grounds that they are not subject to personal jurisdiction in Texas. The Court addresses Defendants' jurisdictional arguments in turn.

### 1.  Legal Standard for Personal Jurisdiction

Plaintiff has the burden of establishing that this Court has personal jurisdiction over each Defendant. *See Int'l Energy Ventures Mgmt., LLC v. United Energy Group, Ltd.*, 800 F.3d 143, 151 (5th Cir. 2015). On a motion to dismiss, a plaintiff is required to present only a *prima facie* case for personal jurisdiction. *Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Where, as here, the Court did not conduct a full evidentiary hearing, the Court will consider the evidence presented by the parties "to help it resolve the

4

jurisdictional issue," but will "construe all disputed facts in Plaintiff's favor and consider them along with the undisputed facts." *Id.*

Courts in Texas may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *DeJoria v. Maghreb Petroleum Expl., S.A.*, 804 F.3d 373, 388 (5th Cir. 2015) (citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013)). In Texas, the long-arm statute extends to the limits of federal constitutional due process. *See Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013).

Jurisdiction may be general or specific. Where a defendant has "continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984), the court may exercise "general" jurisdiction over any action brought against that defendant. *Id.* at 414 n.9. Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8. Plaintiff does not assert that the Court has general personal jurisdiction over MMTC or J. Mendez. Therefore, this case presents only the question of specific jurisdiction.

P:\ORDERS\11-2017\2936MDismiss.docx  180124.1510

"Asserting personal jurisdiction comports with due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice." *DeJoria*, 804 F.3d at 388 (citing *Moncrief*, 414 S.W.3d at 150). A defendant establishes minimum contacts with a state when he purposefully avails himself "of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (citations omitted). "In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice." *Id.* (quoting *Moncrief*, 414 S.W.3d at 154).

### 2. Personal Jurisdiction over MMTC

MMTC argues that as a California corporation, it lacks the requisite contacts with Texas to be subject to jurisdiction in this Court. MMTC contends further that to the extent it has any contacts with Texas, those contacts are not sufficiently related to the claims in this lawsuit to warrant the Court's exercise of personal jurisdiction over it. The Court is not persuaded by these assertions.

In its Complaint, Plaintiff alleges that MMTC has business operations in Texas at the same address as MMTC Texas. Complaint [Doc. # 1], ¶¶ 5-6 at ECF 2. Plaintiff further alleges that MMTC has employees or agents in Texas. *See id.* ¶ 7 at ECF 2-3 (alleging that Defendant T. Mendez, a Texas resident, is an "owner,

6

operator, and director" of MMTC); *id.* ¶ 12 at ECF 3 (alleging that "John Doe" Defendants are agents or employees of MMTC, and that some of those individuals are believed to be residents of Texas). According to the Complaint, Defendant T. Mendez and the "John Doe" Defendants have participated in providing Defendants' purportedly illicit MBLEx-preparation services at a "school" located in Houston, Texas. *See id.* ¶ 18 at ECF 5 ("Defendants regularly advertise the sale of MBLEx questions and other fraudulent services, offering to help customers obtain state massage and bodywork licenses in Texas and elsewhere within a mere ten days. Their MBLEx-preparation services are available online and through the mail, as well as in person at their "schools" located in Houston, Texas, and various cities in California."). There is also an allegation that another agent of MMTC, Defendant Sun, has on at least one occasion attempted to direct a prospective "student" to MMTC's offerings in Texas. *See id.* ¶ 53 at ECF 15 ("Defendant Sun told the investigator that Defendants were currently offering live MBLEx preparation classes in Houston and Los Angeles . . . . She also explained that Defendants' classroom building in Houston offers living accommodations for an additional fee.").

Although Defendants challenge the veracity of Plaintiff's allegations with respect to MMTC and its agents, Defendants failed to produce any competent evidence in connection with the Jurisdiction Motion that discredits Plaintiff's

assertions that MMTC intentionally conducts business in the state of Texas. For example, Plaintiffs have not produced an affidavit from T. Mendez or any another corporate representative of MMTC averring that MMTC has no operations or employees in the state of Texas. Absent such evidence, at this early stage of this case the Court is bound to accept as true the well-pled allegations in Plaintiff's Complaint. Accepting those allegations as true, the Court concludes that Plaintiff has made a *prima facie* showing that MMTC itself conducts business, including offering MBLEx-preparation services, in the state of Texas and has promoted its Texas-based operations to potential customers. Consequently, Plaintiff has shown that MMTC has "purposefully availed" itself of the privilege of conducting activities in Texas and has constitutionally sufficient minimum contacts with the state for purposes of the Court's personal jurisdiction analysis.[3]

---

[3] Among other arguments in its Jurisdiction Response, Plaintiff contends that MMTC Texas's actions and presence in the state of Texas can be attributed to MMTC because they are "part of a unified business, with common ownership and management." Response [Doc. # 16], at ECF 12. Because the Court concludes that the Complaint's well-pled allegations make a *prima facie* showing that MMTC has conducted business in Texas directly through its agents/employees T. Mendez and the John Doe Defendants, the Court need not and does not reach the merits of Plaintiff's attribution argument.

The Court notes, however, that Plaintiff's "unified business" theory appears to be premised largely on the fact that MMTC and MMTC Texas have identical ownership and management and that T. Mendez is the registered agent for both entities. Complaint [Doc. # 1], ¶¶ 5, 7 at ECF 2-3. The Fifth Circuit has interpreted Supreme Court precedent on this subject to stand for the proposition "that so long as a parent and subsidiary maintain separate and distinct corporate

(continued…)

Having determined that Plaintiff has carried its burden with respect to the "minimum contacts" prong of the jurisdiction inquiry, the Court turns to the question of whether Plaintiff's claims against MMTC arise out of or result from its contacts with Texas. Defendants do not address this element of the personal jurisdiction inquiry in their Jurisdiction Motion, but instead make the conclusory assertion in their Reply that MMTC's and J. Mendez's alleged contacts with Texas are "simply not continuous and systematic contacts required under Due Process to

---

(continued…)

entities, the presence of one in a forum state may not be attributed to the other." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). Said differently, "[g]enerally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes," and that "[t]he degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship. *Id.* The Circuit has "noted often that 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *Id.; see also Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000) ("Appellants must make a *prima facie* showing that [the holding company] so controls other organizations that the activities of those organizations may be fairly attributed to [the holding company] for purposes of asserting jurisdiction over it."); *Special Indus., Inc. v. Zamil Grp. Holding Co.*, 578 F. App'x 325, 332 (5th Cir. 2014) (to exercise jurisdiction over parent based on contacts of its subsidiary "[t]he relationship between the subsidiary and parent must be such that they are in reality the same corporation. Typically, this requires the corporate separation to be a fiction."). Thus, even if Plaintiff could prove the allegations in its Complaint, it is questionable whether Plaintiff would satisfy the Fifth Circuit's criteria for imputing MMTC Texas's actions and contacts to MMTC for jurisdictional purposes. The Court also notes that the single case cited by Plaintiff in support of its "unified business" theory, *Taishan Gypsum Co. v. Gross* (*In re Chinese-Manufactured Drywall Products Liability Litigation*), 753 F.3d 521 (5th Cir. 2014), addresses Florida law and Florida law does not appear to be relevant to this dispute.

establish jurisdiction and [are] not sufficient to establish a nexus between the non-resident's contacts with the forum and the cause of action."[4]  Reply [Doc. # 17], at ECF 8.  Defendants' contention is belied by various allegations in the Complaint. Plaintiff asserts five causes of action against all Defendants, including MMTC: (i) copyright infringement, (ii) contributory copyright infringement, (iii) trade secret misappropriation under state law, (iv) trade secret misappropriation under federal law, and (v) tortious interference with contract.[5]  At this juncture, each of these claims could be characterized fairly as arising out of or resulting from, at least in part, MMTC's provision of MBLEx-preparation services in Texas with the use of allegedly stolen or otherwise misappropriated test materials.  For example, Plaintiff's copyright infringement claim allegedly results from, in part, MMTC's

---

[4]      In this case, Plaintiff asserts that the Court may exercise specific, not general, personal jurisdiction over each of MMTC and J. Mendez.  To the extent Defendants argue that the Court must find there are "continuous and systematic contacts" before exercising specific personal jurisdiction over Defendants here, that argument fails because such a finding is required only for the exercise of general personal jurisdiction.  *Compare Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 213 n.83 (5th Cir. 2016) ("The court may have general jurisdiction over a nonresident defendant where the defendant's business contacts with the forum state are continuous and systematic."), *with, id.* ("The court may assert specific personal jurisdiction over a nonresident defendant whose contacts with the forum state are singular or sporadic only if the cause of action asserted arises out of or is related to those contacts.").

[5]      The Complaint also asserts a sixth cause of action for breach of contract. However, that claim only is alleged against Defendants T. Mendez, J. Mendez and Sun.

reproduction, directly or through its agents/employees, of copyrighted test questions in Houston, Texas. Similarly, Plaintiff's cause of action for tortious interference with contract allegedly arises out of MMTC's providing MBLEx test takers with actual test questions through its operations in Texas in violation of an alleged agreement between those test takers and Plaintiff. Therefore, Plaintiff also has carried its burden under the second prong of the Fifth's Circuit's personal jurisdiction analysis.[6]

As Plaintiff has demonstrated that MMTC has constitutionally sufficient minimum contacts with Texas and that its claims against MMTC arise out of or result from those contacts, Defendants bear the burden of proof of showing that the exercise of jurisdiction over MMTC would not be fair and reasonable. *Burger*

---

[6] Plaintiff devotes much of its Jurisdiction Response to detailing MMTC's "indirect" contacts with Texas. For example, Plaintiff cites advertisements that MMTC published online offering services to assist individuals obtain a massage or bodyworks license in Texas, pictures on MMTC's social media accounts purportedly showing Texas massage and bodyworks licenses procured by its students, and test taker registrations from individuals who went to "school" at MMTC and directed that their MBLEx scores be sent to the state of Texas. MMTC Response [Doc. # 16], at ECF 12-14. Even assuming Plaintiff's cited examples would constitute adequate "minimum contacts" for personal jurisdiction purposes, a conclusion the Court does not draw, there is a question whether the claims Plaintiff asserts in its Complaint against MMTC could be described accurately as arising out of or resulting from *those* contacts. However, because the Complaint contains unrefuted allegations that MMTC's agents or employees operate directly in Texas, the Court does not make findings or reach any conclusions as to the viability of exercising personal jurisdiction over MMTC based on its purported "indirect" contacts with Texas.

11

*King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). "[I]t is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 759–60 (5th Cir. 2009). To determine whether the exercise of personal jurisdiction is fair and reasonable, a court must examine "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* In the Jurisdiction Motion, Defendants argue it would "offend traditional notion [*sic*] of fair play and substantial justice if the Defendants are forced to defend a lawsuit in Texas court, where they have no connections with, and which will place an excessive burden and inconvenience on Defendants." MMTC Motion [Doc. # 14], ¶ 8 at ECF 6. Defendants also contend that "Plaintiff's general allegation does not justify [*sic*] forum state's interests or their interests in prosecuting this case against Defendants either since Defendants are not even involved in the subject matter of the lawsuit here in Texas." *Id.* The Court is not persuaded by any of these assertions.

As an initial matter, the Court's finding that MMTC has satisfactory minimum contacts with Texas defeats Defendants' claim that they have "no connection" to Texas. Defendants also have produced no evidence that it would meaningfully burden MMTC to appear in court in Texas. Even assuming they had

made such a showing, that burden on MMTC would not outweigh Texas's strong interest in ensuring that those seeking to obtain massage or bodyworks licenses do not cheat on the MBLEx or Plaintiff's significant interest in ensuring the integrity of its national licensing examination.[7]  Although Defendants' baldly assert that they "are not even involved in the subject matter of the lawsuit here in Texas," they have not produced any evidence to that effect and the well-pled allegations in the Complaint, which the Court must presume to be true at this stage of the litigation, state otherwise.  Defendants have failed to meet their burden by demonstrating that, despite their minimum contacts with Texas, it would be unfair or unreasonable for the Court to exercise personal jurisdiction over MMTC in this case.  Accordingly, Defendants' motion to dismiss Defendant MMTC for lack of personal jurisdiction is **denied**.[8]

---

[7]  Defendants make no arguments with respect to the fourth (interest of the interstate judicial system) and fifth (shared interest of the several states in furthering fundamental social policies) factors.  There is nothing in the current record that would support the conclusion that these factors weigh against the Court's exercise of personal jurisdiction over MMTC.

[8]  The Court's personal jurisdiction determination with respect to MMTC is premised on unrefuted allegations that MMTC has operated in Texas through its own agents or employees.  To the extent that facts uncovered in this case through discovery refute the Court's analysis, MTMC may renew its jurisdictional objection.

### 3. Personal Jurisdiction over J. Mendez

Unlike MMTC, it does not appear that J. Mendez has any direct connection

to Texas that is relevant to this case.[9] While Plaintiff asserts numerous allegations

---

[9] Although Plaintiff expressly denies that it asserts a claim for conspiracy in its Complaint, it is unclear whether it nevertheless argues that J. Mendez (or MMTC) is subject to personal jurisdiction in Texas under a "conspiracy theory" of jurisdiction. *See* MTTC Response [Doc. # 16], at ECF 14 (arguing that J. Mendez has minimum contacts with Texas, in part, because "Defendant J. Mendez is alleged to be a leader of a national network of purported massage training schools that are a mere front for an organized cheating ring. As noted above, this business operation advertises its services in helping customers obtain licenses in Texas, and dozens of its customers have requested that their MBLEx scores be reported to the state of Texas for licensure there."). Under a "conspiracy theory" of jurisdiction, a court can impute the contacts of one member of the conspiracy to the other members of the conspiracy for jurisdictional purposes. To the extent Plaintiff is asserting that J. Mendez is subject to personal jurisdiction in Texas by virtue of acts in Texas taken by any of his alleged cheating ring "co-conspirators," including MMTC Texas, the Court rejects that argument as inconsistent with Fifth Circuit precedent. *See Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004) ("[The plaintiff] also contends that specific personal jurisdiction can be based on [a defendant's] alleged participation in a conspiracy to obtain [the plaintiff's] confidential information. To establish its *prima facie* case of specific personal jurisdiction, [the plaintiff] was required to demonstrate that [a defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas.") (citing *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999); *Eagle Metal Prod., LLC v. Keymark Enterprises, LLC*, 651 F. Supp. 2d 577, 593 (N.D. Tex. 2009) (rejecting application of "conspiracy theory" of jurisdiction based on Fifth Circuit case law, including *Delta Brands*); *Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 608 (E.D. Tex. 1994) ("There are numerous problems with plaintiffs' contention that if this court has personal jurisdiction over one of the conspirators, it can exercise personal jurisdiction over the co-conspirators as well. First, there is no support in the Fifth Circuit, or any other Circuit for that matter, to support this court exercising personal jurisdiction on this theory."); *Dietz v. Dietz*, No. CIV.A. 08-0521, 2008 WL 5351049, at *3 (W.D. La. Sept. 24, 2008), *aff'd in part and remanded*, No. CIV.A. 08-0521, 2008 WL 5351048 (W.D. La. Dec. 19, 2008) ("Plaintiff has cited no authority from the Fifth Circuit indicating that the Fifth Circuit has adopted [the conspiracy theory] of

(continued…)

of wrongdoing against J. Mendez, none of J. Mendez's alleged misconduct is alleged to have occurred in Texas.[10] Moreover, J. Mendez submitted an affidavit in connection with the Jurisdiction Motion averring that he "has not conducted any business in Texas relating to the business operations of MMTC or MMTC Texas," and that he has "never come to Texas in any capacity relating to the business operations of MMTC schools." J. Mendez Affidavit [Doc. # 14], ¶¶ 3-4 at ECF 22-23. Despite the absence of any apparent direct ties between J. Mendez and the state of Texas, Plaintiff argues that the Court nevertheless may exercise personal jurisdiction over him because it "has established [J. Mendez]'s active involvement in [MMTC]'s operations, which included operations directed at Texas." Jurisdiction Response [Doc. # 16], at ECF 15. Said differently, Plaintiff appears to be asserting that MMTC is J. Mendez's "alter ego," meaning that MMTC's

---

(continued…)
personal jurisdiction. The Court has conducted its own independent research, and has been unable to find any decisions from the Fifth Circuit specifically dealing with this issue, either. However, district court cases from within the circuit have rejected this theory.").

[10] *See e.g.,* Complaint [Doc. # 1], ¶ 62 at ECF 16-17 (alleging J. Mendez "secretly and improperly" recorded MBLEx test questions using a hidden camera at unidentified MBLEx testing site); Declaration of Debra Persinger [Doc. # 16-2], ¶ 10 at ECF 5-6 (stating J. Mendez is the Secretary of Just for Your Health College of Massage, a California school that allegedly provides false educational transcripts to MBLEx test takers to help them obtain state licenses).

15

contacts with Texas can be attributed to J. Mendez for purposes of determining personal jurisdiction.

The Fifth Circuit recognizes an "alter ego" theory of personal jurisdiction. As the Circuit explained in *Patin v. Thoroughbred Power Boats Inc.*:

> federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court. The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the *same entity*, the jurisdictional contacts of one are the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis.

*Patin*, 294 F.3d 640, 653 (5th Cir. 2002) (emphasis original). "[T]he piercing-the-corporate-veil test for attribution of contacts, *i.e.*, personal jurisdiction, is less stringent than for liability." *TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 454 (N.D. Tex. 2017). For example, allegations of fraud are not required for jurisdictional alter-ego/veil piercing analysis. *Licea v. Curacao Drydock Co.*, 627 F. App'x 343, 348 (5th Cir. 2015). Instead, the touchstone of the "alter ego" theory of personal jurisdiction is a lack of separateness between an individual and the entity they purportedly control. *See Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006) ("Under Texas law, alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in

16

injustice."); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 593 (5th Cir. 1999) ("Alter ego is demonstrated by evidence showing a blending of identities, or a blurring of lines of distinction, both formal and substantive, between two corporations.").

In the Complaint, Plaintiff alleges that J. Mendez is the "owner and operator" of MMTC.[11] J. Mendez is also alleged to have engaged in numerous acts, such as secretly recording MBLEx questions and operating a school that provides individuals with sham educational credentials, in furtherance of MMTC's business. In his affidavit, J. Mendez denies owning or managing "any of the corporate entities involved in the lawsuit, including [MMTC]", or ever being a "partner, shareholders, director, officer or employee of either MMTC or MMTC Texas." Mendez Affidavit [Doc. # 14], ¶¶ 3-4 at ECF 22-23. Plaintiff, however, presented evidence in its Jurisdiction Response that calls into question the veracity of these averments. Specifically, Plaintiff provided a copy of MMTC's most recent Statement of Information from the Secretary of State of the State of California, which lists J. Mendez as a director of MMTC. Declaration of Debra

---

[11] Although J. Mendez is also alleged to be the owner and operator of MMTC Texas, Plaintiff makes no argument regarding his level of involvement with MMTC Texas in the Jurisdiction Response.

Persinger[12] in Support of Plaintiff's Opposition to Defendants J. Mendez's and MMTC's Motion to Dismiss (the "Persinger Declaration") [Doc. # 16-2], Exhibit I at ECF 14.

Based on the current record, the Court concludes that Plaintiff has not carried its burden of making a *prima facie* showing that MMTC's jurisdictional contacts with Texas can be imputed to J. Mendez because MMTC is his "alter ego." Even assuming that J. Mendez is an owner and operator of MMTC, and even assuming that J. Mendez is actively involved in MMTC's business, the Complaint is devoid of allegations that would support a reasonable inference that there is a "unity" between J. Mendez and MMTC that would justify disregarding MMTC's presumptive status as a distinct entity. There are no allegations or other evidence that MMTC ignores corporate formalities, that J. Mendez's and MMTC's property are indistinguishable or that J. Mendez exercises an unacceptably high degree of control over MMTC. To the contrary, the Complaint alleges that at least one other individual, T. Mendez, also is an "owner, operator and director" of MMTC, Complaint [Doc. # 1], ¶ 7 at ECF 2, without making any effort to identify their relative levels of control and influence over the business. The allegations in the Complaint and the evidence in the Persinger Declaration, whether considered

---

[12]     Ms. Persinger is Plaintiff's Executive Director.

individually or collectively, fail to make a *prima facie* showing that J. Mendez and MMTC are "the same entity."

In the Jurisdiction Response, Plaintiff alternatively requests the opportunity to engage in jurisdictional discovery if the Court finds that it has not adequately established a *prima facie* case for personal jurisdiction over MMTC or J. Mendez. A district court has "broad discretion in all discovery matters," including those relating to jurisdiction, and "such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Paolino v. Argyll Equities, L.L.C.*, 401 F. Supp. 2d 712, 722 (W.D. Tex. 2005). To support a request for jurisdictional discovery, a plaintiff must first make "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005). A preliminary showing does not require proof that personal jurisdiction exists, but "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Id.* A plaintiff is not entitled to jurisdictional discovery when "the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir.2009); *see also Fielding*, 415 F.3d at 429 ("If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained.")

In this case, the Court holds that Plaintiff has made a "preliminary showing of jurisdiction" with respect to J. Mendez. The discrepancy between J. Mendez's conclusory averment that he has never had any role with MMTC and documentation filed with the Secretary of State for the State of California identifying him as a director of that entity raise important questions as to the true extent and nature of his relationship with MMTC. When considered together with the Complaint's allegations that he is an "owner and operator" of MMTC and has undertaken numerous actions for MMTC's benefit, Plaintiff has met its burden at this time to raise a reasonable inference that MMTC potentially is J. Mendez's alter ego for jurisdictional purposes. Consequently, Plaintiff has established "the possible existence of the requisite contacts" between J. Mendez and the state of Texas and is entitled to limited jurisdictional discovery on the subject of the relationship between J. Mendez and MMTC.[13]

---

[13]  Fifth Circuit authority requires Plaintiff to identify specific facts or issues on which it seeks jurisdictional discovery. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) ("A plaintiff must state what facts it believes discovery would uncover and how those facts would support personal jurisdiction."). Although Plaintiff made no such identification in the Jurisdiction Response, the Court has concluded that Plaintiff is entitled to limited discovery solely as to the relationship between J. Mendez and MMTC. On or before **12:00 p.m. on January 29, 2018**, Plaintiff shall provide J. Mendez with a specific list of jurisdictional discovery requests. Within three business days of receiving the discovery requests, J. Mendez shall provide Plaintiff with a specific list of any objections to the requests. Thereafter, the parties shall meet and confer to attempt to resolve any disagreements. If any disagreements persist, each party may file a letter (3 page limit) with the Court no later than **12:00 p.m. on February 20, 2018**

(continued…)

## B.    Failure To State A Claim

In addition to MMTC's and J. Mendez's personal jurisdiction arguments, each of the Defendants also seeks dismissal of the Complaint in its entirety pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure.  Because the Court concludes that Plaintiff should be granted leave to amend its Complaint to address at least one claim that is deficient as currently pled but which deficiency may be curable, the Court **denies** without prejudice the Dismissal Motions to the extent they argue that Plaintiff has failed to state a claim upon which relief can be granted.

### 1.    Legal Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).  The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.  *Harrington*, 563 F.3d at 147.  The complaint must, however, contain sufficient

---

(continued…)
describing the matters to be resolved.  The Court will address any outstanding disputes at the parties' pre-trial conference scheduled for February 21, 2018.  The Court reserves the right to award attorney's fees and costs to the prevailing party in any dispute pertaining to the jurisdictional discovery permitted by this Memorandum and Order.

21

factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

### 2. Breach of contract

In Count VI of the Complaint, Plaintiff asserts a claim for breach of contract against Defendants T. Mendez, J. Mendez and Sun. The gravamen of the claim is that each of those Defendants sat for the MBLEx, and in doing so, they entered into a contract with Plaintiff to preserve the confidentiality of the exam and its questions. Plaintiff alleges these Defendants breached that contract by recording, reproducing or otherwise failing to preserve the confidentiality of the test questions they were exposed to during their respective examinations. Plaintiff did not attach to the Complaint copies of any of the alleged contracts between it and Defendants. The Court thus cannot assess the viability of the breach of contract claim because there are several open issues, such as what state's law governs these contracts.

Plaintiff, an Illinois corporation with its principal place of business in Kansas, initiated this litigation in Texas. Defendants accused of breach of contract are all California residents and it is unknown in what state they took the MBLEx. The alleged contracts in this case potentially are governed by any one of a multitude of different states' laws and the Court cannot assess the legal viability of this claim. Nevertheless, Plaintiff at this early stage in the litigation is entitled to leave to replead its claims.[14]

Before filing an amended complaint, Plaintiff may plead only claims that "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and have evidentiary support, or are likely to have such support after a reasonable opportunity for further investigation or discovery, in light of meritorious arguments raised in the Dismissal Motions. *See* FED. R. CIV. P. 11. Further, Plaintiff may name only defendants with potential liability under applicable substantive and procedural law and must make specific allegations against each Defendant separately to the extent possible. The Dismissal Motions, to the extent they assert that the Complaint fails to state a claim upon which relief can be granted, are **denied without prejudice**.

---

[14]    To the extent Plaintiff amends its Complaint to reassert a breach of contract claim, the amended complaint must attach copies of each contract at issue.

## III.   CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that within thirty (30) days of the date of this Memorandum and Order, Plaintiff shall file an amended complaint in this case.  Plaintiff shall include copies of the contracts germane to its breach of contract claim as attachments to the amended complaint.  It is further

**ORDERED** that the 12(b)(6) Motion [Doc. # 13] is **DENIED AS MOOT**. It is further

**ORDERED** that the Jurisdiction Motion [Doc. # 14] is **DENIED WITHOUT PREJUDICE** as to the arguments pertaining to the Court's personal jurisdiction over Defendants MMTC and J. Mendez.  Plaintiff is entitled to conduct limited jurisdictional discovery regarding the relationship between Defendants MMTC and J. Mendez as set forth in this Memorandum and Order.  It is further

**ORDERED** that to the extent Defendants contend Plaintiff has failed to state a claim upon which relief can be granted, the Jurisdiction Motion [Doc. # 14] is **DENIED AS MOOT**.

SIGNED at Houston, Texas, this 24th day of **January, 2018**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE