United States District Court
Southern District of Texas
**ENTERED**
March 26, 2019
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Federation of State Massage Therapy Boards, | § | |
| *Plaintiff,* | § | |
| vs. | § | No. 4:17-CV-2936 |
| Mendez Master Training Center, Inc., *et al.*, | § | |
| *Defendants.* | § | |

## ORDER AND REPORT AND RECOMMENDATION
## ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Before the Court are the Parties' cross motions for partial summary judgment.[1]

Plaintiff Federation of State Massage Therapy Boards ("Federation" or "Plaintiff")

filed a motion for partial summary judgment.[2] ECF No. 111. Defendants Mendez

Master Training Center, Inc. ("MMTC-CA"); MMTC Texas, Inc. ("MMTC-TX");

Ms. Tesla Mendez; and Mr. Jorge Mendez (collectively "Defendants") filed a cross

motion for partial summary judgment with their opposition to Plaintiff's motion,

---

[1] On February 8, 2019, the District Judge referred this case for all pretrial purposes pursuant to 28 U.S.C. § 636, including all potentially dispositive matters for Report and Recommendation. Order, ECF No. 124. Pursuant to 28 U.S.C. § 636(b)(1)(A), a motion for summary judgment is a dispositive motion appropriate for a Report and Recommendation. A motion for judicial notice is a non-dispositive motion on which this Court may rule.

[2] Defendants filed an opposition, ECF No. 116, and Plaintiff filed a reply, ECF No. 125.

ECF No. 116, and a motion for judicial notice, ECF No. 123.[3] The parties appeared before the Court on March 22, 2019 to argue these motions. Having considered the arguments of counsel and the record, which contains both factual evidence and applicable legal authorities, the Court recommends that Plaintiff's motion for partial summary judgment, ECF No. 111, should be granted. Defendant's cross motion for partial summary judgment, ECF No. 116, should be denied. Defendant's motion for judicial notice, ECF No. 123, is denied.

## I.
## FACTUAL OVERVIEW

### A.  The Massage and Bodywork Licensing Examination.

The Federation is a non-profit 501(c)(3) corporation that administers and holds copyrights for the national Massage and Bodywork Licensing Examination ("MBLEx") for massage professionals. Persinger Decl. ¶¶ 3-4, 19, ECF No. 111-1; Ex. A-1, ECF No. 111-2. Licensing agencies in 44 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands rely on MBLEx results among other criteria to evaluate applicants for massage therapy licensure. *Id*. ¶ 5. The MBLEx is developed in compliance with national testing guidelines and provides a unified set of nationally-verified, entry-level standards for the safe and competent practice of massage and bodywork. *Id*. ¶ 6. The MBLEx tests several subject areas including

---

[3] Plaintiff filed an opposition with its reply. ECF No. 125.

(a) anatomy and physiology; (b) kinesiology; (c) benefits and physiological effects of techniques that manipulate soft tissue; (d) pathology, contraindications, areas of caution, and special populations; (e) client assessment, reassessment, and treatment planning; (f) ethics, boundaries, laws, regulations; and (g) guidelines for professional practice. *Id*. ¶ 7. It is a 100-question multiple-choice exam administered via a computer, and candidates can register to take the exam year-round at test sites across the United States. *Id*. ¶ 11.

The development of exam questions requires substantial time and effort. *Id*. ¶ 12. Questions are drafted by representative groups of practitioners from across the country based on surveyed content relevant to the field. *Id*. ¶¶ 13-16. Each new question is reviewed by a committee of subject matter experts as well as edited to ensure the item is clear and there is only one correct answer. *Id*. ¶ 17. Every five years, the Federation reviews current practices and standards in the field to ensure the exam stays up to date. *Id*. ¶ 18.

The Federation requires test takers to agree multiple times to keep the exam content confidential, does not release exam questions, requires test takers to present two forms of identification and undergo biometric security procedures, and does not permit test takers to bring personal items into the testing room. *Id*. ¶¶ 8, 20-21, 30-31, 34, 37-43, ECF No. 111-1; Ex. A-2, ECF No. 111-3; Ex. A-3, ECF No. 111-4; Ex. A-4, ECF No. 111-5; Ex. A-5, ECF No. 111-6; Ex. A-6, ECF No. 111-7; Ex. A-

7, ECF No. 111-8; Ex. A-8, ECF No. 111-9.

### B. Defendants' Test Preparation Services.

Between 2010 and 2012, Defendant Tesla Mendez became aware that several MBLEx test preparation programs in Los Angeles publicly advertised that they used MBLEx questions and answers that were translated from English into Mandarin Chinese. T. Mendez Decl. ¶ 21, ECF No. 117. Tesla Mendez took such a course that used actual MBLEx questions before taking the exam. T. Mendez Dep. 19:12-22:13, ECF No. 111-13. In 2013, Tesla Mendez took and passed the MBLEx and received a California license in massage and bodywork. T. Mendez Dep. 26:2-8, 28:13-16, ECF No. 118-2; Persinger Decl. ¶ 45, ECF No. 111-1.

In November 2015, Tesla Mendez formed MMTC-CA in California to provide a similar MBLEx test preparation service. T. Mendez Decl. ¶¶ 24, 53, ECF No. 117; T. Mendez Dep. 39:21-40:4, ECF No. 118-2; Ex. S at 108, ECF No. 117-1. To that end, Plaintiff purchased actual MBLEx questions and answers from a woman in Sacramento, California for $500.00. T. Mendez Decl. ¶ 65, ECF No. 117; T. Mendez Dep. 92:25-93:15, 108:24-111:11, 136:4-6, ECF No. 118-2; J. Mendez Dep. 24:8-12, ECF No. 111-12; Ex. D at 11, 13, ECF No. 111-14. Tesla Mendez also formed a Texas branch of her company, MMTC-TX, in July 2016. T. Mendez Dep. 43:6-12, 68:22-24, ECF No. 118-2; T. Mendez Decl. ¶ 54, ECF No. 117; Ex. U at 113, ECF No. 117-1.

4

MMTC-CA and MMTC-TX administered a test preparation program for the MBLEx. T. Mendez Dep. 47:18-48:11, 67:9-12, ECF No. 118-2. Tesla Mendez copied the purchased exam questions verbatim into a simulated exam software. *Id*. 93:16-94:13, 99:4-12. Students could take the simulated exams containing actual MBLEx questions on a computer in MMTC-CA's and MMTC-TX's classrooms, or through an online account with a web-based application called WeChat. *Id*. 91:22-92:4, 94:14-95:8.

MMTC-CA and MMTC-TX also showed students a video in which an instructor reviewed the questions, provided the answers in both English and Chinese with explanations, explained key terminology, and taught memorization techniques for key terms and to identify correct answer choices. *Id*. 95:9-96:8, 96:25-98:9, 99:25-101:6. MMTC-CA and MMTC-TX also provided students with a glossary of key terms and phrases to memorize. T. Mendez Dep. 24:3-25:24, ECF No. 111-13. Collectively across California and Texas, MMTC-CA and MMTC-TX served and profited from hundreds of students, estimated to be between 800 and 1,500. T. Mendez Dep. 116:21-117:7, ECF No. 118-2.

Tesla Mendez was the sole director, officer, and shareholder of both companies, with one exception. *Id*. 40:15-25; T. Mendez Decl. ¶¶ 49, 52,

ECF No. 117. In or about July 2016, Tesla Mendez added her husband,[4] Jorge Mendez, as one of the directors of MMTC-CA for at least some period of time.[5] T. Mendez Dep. 41:1-14, ECF No. 118-2.

While Jorge Mendez did not obtain any massage therapy education, he took the MBLEx in April 2015 and March 2016 for the benefit of MMTC-CA. Persinger Decl. ¶¶ 47, 49, ECF No. 111-1; J. Mendez Dep. 10:2-11:11, ECF No. 111-12; J. Mendez Dep. 3:11-23, 26:8-10, ECF No. 111-12; T. Mendez Dep. 120:16-121:15, 140:8-142:6, ECF No. 118-2; T. Mendez Decl. ¶ 64, ECF No. 117; Ex. D at 13, ECF No. 111-14. When Jorge Mendez took the MBLEx in April 2015 in California, he wore a small recording device on one of the buttons on his shirt. J. Mendez Dep. 9:15-10:1, 13:13-17, ECF No. 111-12; Persinger Decl. ¶ 48, ECF No. 111-1; Ex. A-9, ECF No. 111-10. While Defendants dispute that Jorge Mendez recorded actual test questions while taking the MBLEx, it is undisputed that he wore the camera into the testing room while it was recording video and did not remove it or turn it off.[6] T. Mendez Decl. ¶¶ 64, 68, ECF No. 117; J. Mendez Dep. 9:15-10:1, 11:12-16, 13:20-

---

[4] Tesla Mendez and Jorge Mendez married in December 2012. T. Mendez Dep. 22:9-13, ECF No. 118-2.

[5] Jorge Mendez alleged that he resigned in August 2016. Ex. D at 5, ECF No. 111-14.

[6] Defendants contend that they only intended to record the check in procedures for the testing center and that Jorge Mendez did not record any of the test questions because the camera did not have a lot of memory, the camera turned off by itself after the check in process, and it was placed too low on his shirt to be able to record anything appearing on the computer screen. T. Mendez Dep. 119:16-121:15, ECF No. 118-2; J. Mendez Dep. 10:2-11:11, ECF No. 111-12; T. Mendez Decl. ¶¶ 64-65, ECF No. 117; Ex. D at 13-14, ECF No. 111-14.

14:9, 19:2-3, 22:13-23:1, ECF No. 111-12; T. Mendez Dep. 119:16-120:5, ECF No. 118-2; Ex. D at 13, ECF No. 111-14.

MMTC-CA and MMTC-TX discontinued operations in or about July 2017.[7] T. Mendez Dep. 42:20-43:5, 46:21-47:8, 69:11-12, 69:21-70:12, ECF No. 118-2.

## II.
## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to its case and on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

"Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine dispute of material fact." *Stewart v. U.S. Bank Nat. Ass'n*, 107 F. Supp. 3d 705, 707 (S.D. Tex. 2015). "The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. A

---

[7] MMTC-CA was legally dissolved in February 2018. T. Mendez Decl. ¶ 50, ECF No. 117.

dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation marks and citations omitted).

"This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at 1075). "'[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial,' and summary judgment as a matter of law must be granted." *Brown v. U.S. Postal Inspection Serv.*, 206 F. Supp. 3d 1234, 1242 (S.D. Tex. 2016) (quoting *Celotex*, 477 U.S. at 322–23).

The non-movant must identify specific evidence in the record and articulate how that evidence supports its claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). However, the court must draw all reasonable inferences in the light most favorable to the non-moving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).

### III.
### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff moved for partial summary judgment on its claims for copyright infringement as to all Defendants (including personal liability against Tesla Mendez

8

and Jorge Mendez), contributory copyright infringement as to Jorge Mendez, breach of contract as to both Tesla Mendez and Jorge Mendez, and for costs and attorneys' fees.[8] ECF No. 111 at 6.

### A. Plaintiff Is Entitled To Summary Judgment On Its Copyright Infringement Claim.

Plaintiff moved for summary judgment on its copyright infringement claim against all Defendants. ECF No. 111 at 6. To prove copyright infringement, Plaintiff must show (1) ownership of a valid copyright and (2) actionable copying. *Flowserve Corp. v. Hallmark Pump Co.*, No. 4:09-CV-675, 2011 WL 1527951, at *3 (S.D. Tex. Apr. 20, 2011) (citing *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003)). Actionable copying "is the copying of constituent elements of the work that are copyrightable" and has two elements: (1) factual copying and (2) substantial similarity between the copyrighted work and the allegedly infringing work. *Flowserve Corp.*, 2011 WL 1527951, at *3, 4 (citing *Bridgmon*, 325 F.3d at 576).

### 1. Plaintiff has established a prima facie case that it owned a valid copyright.

"A certificate of registration 'constitutes prima facie evidence of the validity of the copyright....'" *Flowserve Corp.*, 2011 WL 1527951, at *3 (citing 17 U.S.C. § 410(c)). This creates a rebuttable presumption that the copyright is valid.

---

[8] Plaintiff also brought claims for misappropriation of trade secrets under federal and state law, tortious interference with a contract, and violation of the Texas Harmful Access by a Computer Act. ECF No. 71. However, Plaintiff did not move for summary judgment on these claims.

*Glasscraft Door I, L.P. v. Seybro Door & Weathership Co.*, No. H-08-2667, 2009 WL 3460372, at *3 (S.D. Tex. Oct. 22, 2009) (citing *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995)).

Plaintiff presented five certificates of registration from the United States Copyright Office for the MBLEx. Persinger Decl. ¶ 19, ECF No. 111-1; Ex. A-1, ECF No. 111-2. Defendants failed to present any argument or evidence disputing the certificates' validity or that the subject matter of the certificates is not copyrightable. *See Flowserve Corp.*, 2011 WL 1527951, at *5 (finding this element is met where defendant did not point to any evidence that plaintiff does not hold a valid copyright). Thus, as the certificate of registration is valid prima facie evidence and Defendants have provided no controverting evidence, there is no genuine issue of material fact and Plaintiff has established that it owns a valid copyright to the MBLEx questions.

> **2. Plaintiff established that Defendants engaged in actionable copying of its copyrighted test materials.**
>
> > **a. *Factual copying*.**

Factual copying addresses "whether the alleged infringer copied, or 'actually used the copyrighted material in his own work.'" *Flowserve Corp.*, 2011 WL 1527951, at *3 (citing *Bridgmon*, 325 F.3d at 576). Factual copying may be established by direct or circumstantial evidence. *Glasscraft Door I, L.P.*, 2009 WL 3460372, at *2 (citing *Bridgmon*, 325 F.3d at 576). "Direct evidence of copying is rarely available because it includes evidence such as party admissions, witness

10

accounts of the physical act of copying, and common errors in the works of plaintiffs and the defendants." *Nat'l Conf. of Bar Exam'rs v. Multistate Legal Studies, Inc.*, 458 F. Supp. 2d 252, 256 (E.D. Pa. 2006) (quoting *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006)).

"As direct evidence of copying is rarely available, factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Flowserve Corp.*, 2011 WL 1527951, at *3 (citing *Peel & Co. v. Rug Market*, 238 F.3d 391, 394 (5th Cir. 2001)). "Access has been defined to include an opportunity to view the copyrighted work." *Id*. (citing *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 113 (5th Cir. 1978)). Probative similarity requires evidence that "the works, 'when compared as a whole, are adequately similar to establish appropriation.'" *Id*. (citing *Gen. Univ. Sys. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004)). "Alternatively, factual copying may be established without a showing of access 'if the two works are so strikingly similar as to preclude the possibility of independent creation.'" *Id*. (citing *Gen. Univ. Sys.*, 379 F.3d at 142).

### i. Direct evidence.

"This is the rare case in which there is direct evidence that defendants copied plaintiff's work." *Multistate Legal Studies, Inc.*, 458 F. Supp. 2d at 256. Defendants do not contest, and in fact openly testified, that they purchased MBLEx questions

from a third party, reproduced them in the format of online simulated practice examinations, and provided MMTC-CA and MMTC-TX students access to the exam questions via the online simulated practice examinations.[9] *See*, *e.g.*, *Educ. Testing Serv. v. Miller*, No. 88-2819, 1991 WL 212181, at \*4 (D.D.C. Sept. 30, 1991) (finding evidence of copying where defendant admits he photocopied exam and keyed the exam into a computer).

Furthermore, Defendants and their employees provided students with the answers to the exam questions.[10] Defendants' very goal in establishing MMTC-CA and MMTC-TX was to provide a preparation course using actual MBLEx questions, as they had seen other companies do, and Defendants advertised themselves as using actual MBLEx questions.[11] *See Multistate Legal Studies, Inc.*, 458 F. Supp. 2d at 256 (finding direct evidence of copying where defendant admitted that he and his employees regularly write down questions appearing on examinations they took, defendant's advertisements brag about how close his questions are to those on the actual exam, and defendant's questions reproduce exam questions nearly verbatim).

---

[9] T. Mendez Decl. ¶ 65, ECF No. 117; T. Mendez Dep. 91:22-92:4, 92:25-94:13, 108:24-111:11, 120:22-121:15, 136:4-6, ECF No. 118-2; J. Mendez Dep. 24:8-12, ECF No. 111-12; Ex. D at 11, 13, ECF No. 111-14.

[10] T. Mendez Dep. 95:9-96:8, 96:25-98:9, 99:25-101:6, ECF No. 118-2.

[11] T. Mendez Decl. ¶¶ 21, 23-24, 30, ECF No. 117; T. Mendez Dep. 108:24-111:25, ECF No. 118-2.

### ii. *Indirect evidence.*

Even if this were insufficient as direct evidence, there is sufficient circumstantial evidence to establish factual copying because Defendants had access to the copyrighted material and there is probative similarity between the copyrighted work and Defendants' exam questions. *See Flowserve Corp.*, 2011 WL 1527951, at *3 (citing *Peel*, 238 F.3d at 394). In terms of access, Tesla Mendez took the MBLEx, took a MBLEx preparation course that used actual MBLEx questions,[12] and purchased MBLEx questions from a third party.[13] *See Nat'l Bd. of Med. Exam'rs v. Optima Univ. LLC*, No. 1:09-CV-1043, 2011 WL 7615071, at *6-7 (W.D. Tenn. Sept. 29, 2011) (finding evidence of copying where defendants took the exam themselves and at least some of defendants' preparation course questions were verbatim copies of the actual exam questions); *accord Assoc. of Am. Med. Coll. v. Mikaelian*, 571 F. Supp. 144, 150 (E.D. Pa. 1983) (same), *aff'd*, 734 F.2d 3 (3d Cir. 1984).

Jorge Mendez also took the MBLEx twice and could have accessed the

---

[12] About 95 percent of the questions on the actual MBLEx Tesla Mendez took in 2013 matched the questions she practiced at the training center. T. Mendez Dep. 21:23-22:13, ECF No. 111-13. Her teacher even instructed the students not to score too high or get a perfect score. *Id.* Tesla Mendez intentionally changed some of her answers from the right ones to wrong ones so that she would not score too high. *Id.*

[13] Persinger Decl. ¶ 45, ECF No. 111-1; T. Mendez Dep. 26:2-8, 28:13-16, 92:25-93:15, 108:24-111:11, 136:4-6, ECF No. 118-2; T. Mendez Dep. 19:12-22:13, ECF No. 111-13.

MBLEx questions that he knew his wife purchased from a third party.[14] Even "[a]ccess through a third party is legally sufficient." *Am. Registry of Radiologic Technologists v. Bennett*, 939 F. Supp. 2d 695, 704 (W.D. Tex. 2013) (quoting *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533 n.6 (5th Cir. 1994)).[15]

Furthermore, there is a probative similarity between alleged infringing work and Plaintiff's MBLEx questions. Plaintiff prepared a side by side comparison of 500 questions Defendants produced in the form of five practice exams alongside Plaintiff's actual MBLEx questions.[16] Ex. A-10, ECF No. 113. The Court's review of these questions shows that approximately 284 are verbatim, and at least another 166 are near verbatim. *Id*. They "are so strikingly similar as to preclude the possibility of independent creation." *Flowserve Corp.*, 2011 WL 1527951, at *3 (citing *Gen. Univ. Sys.*, 379 F.3d at 142). Defendants even concede they did not draft

---

[14] Persinger Decl. ¶¶ 47, 49, ECF No. 111-1; J. Mendez Dep. 10:20-22, 24:8-12, ECF No. 111-12; Ex. D at 11, ECF No. 111-14.

[15] *See*, *e.g.*, *Nat'l Bd. of Med. Exam'rs*, 2011 WL 7615071, at *6 (finding evidence of copying where defendants accessed exam questions from other test takers who recently took the exam and provided the questions); *accord Educ. Testing Serv. v. Simon*, 95 F. Supp. 2d 1081, 1088 (C.D. Cal. 1999) (same).

[16] Plaintiff contends that in April 2017, it hired a private investigator to investigate infringement and he purchased a thumb drive containing practice tests with MBLEx questions from one of Defendants' employees. Persinger Decl. ¶¶ 52-55, ECF No. 111-1. Plaintiff alleged that there are therefore even more questions that were copied verbatim or near verbatim. *Id*. ¶ 60. However, because Defendants dispute that they sold practice tests to Plaintiff's investigator or provided such thumb drives to students, T. Mendez Dep. 10:18-11:2, 98:16-99:3, ECF No. 118-2, Plaintiff did not make this the subject of its summary judgment motion, ECF No. 111 at 7 n.1.

any of the content themselves and make no attempt to argue that they did. T. Mendez

Dep. 99:4-12, ECF No. 118-2; J. Mendez Dep. 24:18-22, ECF No. 111-12.

### b. *Substantial similarity.*

"Copying is actionable only if there is substantial similarity between the

copyrighted design and the alleged copy." *Glasscraft Door I, L.P.*, 2009 WL

3460372, at *4. "To determine whether an instance of copying is legally actionable,

a side-by-side comparison must be made between the original and the copy to

determine whether a layman would view the two works as 'substantially similar.'"

*Flowserve Corp.*, 2011 WL 1527951, at *4 (quoting *Creations Unlimited, Inc. v.*

*McCain*, 112 F.3d 814, 816 (5th Cir. 1997)). The similarity must relate to "the

protectable aspects of the allegedly infringed work." *Multistate Legal Studies, Inc.*,

458 F. Supp. 2d at 256-57 (citing *Dam Things from Denmark v. Russ Berrie & Co.*,

290 F.3d 548, 562 (3d Cir. 2002)). While substantial similarity is often a question

for the factfinder, summary judgment is appropriate "when the similarities between

plaintiff's and defendant's works are so overwhelming as to preclude the possibility

of independent creation" and the court finds that no reasonable juror could reach a

contrary conclusion. *Flowserve Corp.*, 2011 WL 1527951, at *4 (citations omitted).

As discussed above, approximately 284 of Defendants' practice questions are

verbatim copies of Plaintiff's questions, and at least another 166 are near verbatim.[17]

---

[17] Even to the extent that some of the questions may not be verbatim copies, they are substantially

Ex. A-10, ECF No. 113; *see also Nat'l Bd. of Med. Exam'rs*, 2011 WL 7615071, at *3, 7 (finding substantial similarity where several exam questions were reproduced verbatim or nearly verbatim); *accord Multistate Legal Studies, Inc.*, 458 F. Supp. 2d at 257 (same); *Assoc. of Am. Med. Coll.*, 571 F. Supp. at 150-51 (same). The similarities are so striking they "can only be explained by copying, rather than by coincidence, independent creation, or prior common source." *Assoc. of Am. Med. Coll.*, 571 F. Supp. at 151 (quoting *Strachborneo v. Arc Music Corp.*, 357 F. Supp. 1393, 1403 (S.D.N.Y. 1973)). No reasonable juror could find that Defendants' questions were not copied from the MBLEx.

Furthermore, it is clear that Defendants copied material that was entitled to copyright protection. Courts across the country have uniformly and unequivocally held that secure licensing examination questions are entitled to copyright protection.[18] *See Am. Registry of Radiologic Technologists*, 939 F. Supp. 2d at 703

---

similar in that many questions merely omit articles such as "a" or "the," change a word from plural to singular or vice versa, contain a spelling or grammatical error, slightly change the wording of the question or the order of the words, or change some of the answer choices. *See* Ex. A-10, ECF No. 113. Courts have found that "[l]ess than wholesale reproduction can also provide a sufficient basis to conclude there was copying." *Multistate Legal Studies, Inc.*, 458 F. Supp. 2d at 258 (finding substantial similarity even where questions contained some factual embellishments but had the same material facts or at least some identical answer choices); *Simon*, 95 F. Supp. 2d at 1088 ("Substantial similarity does not require verbatim copying…. Immaterial variations do not alter the conclusion that infringing material is substantially similar to copyrighted material."); *see also Educ. Testing Serv. v. Katzman*, 793 F.2d 533, 541 (3d Cir. 1986) (finding substantial similarity for preliminary injunction where there is no verbatim copying, but at least some questions contained only minor differences, such as substituting different numbers in equations).

[18] The protection "extends not simply to the order and arrangement of the questions, but also to the questions themselves." *Miller*, 1991 WL 212181, at *4.

(questions appearing in secure examinations are subject to copyright protection);
*accord Katzman*, 793 F.2d at 539 (same); *Nat'l Bd. of Med. Exam'rs*, 2011 WL
7615071, at *7 (same); *Multistate Legal Studies, Inc.*, 458 F. Supp. 2d at 259 (same);
*Simon*, 95 F. Supp. 2d at 1089 (same); *Miller*, 1991 WL 212181, at *4 (same); *Assoc.
of Am. Med. Coll.*, 571 F. Supp. at 150 (same). Defendants do not cite any contrary
authority. "Teaching the … principles tested … is permissible. Doing so using the
same fact patterns, prompts, and answer-choice combinations … is not." *Multistate
Legal Studies, Inc.*, 458 F. Supp. 2d at 259. "[W]holesale reproduction of a
copyrighted question is not permitted" because the questions typically "reflect
original expression in their wording, particularized facts, and answer choices." *Id*.
Accordingly, summary judgment should be granted for Plaintiff on its copyright
infringement claim.[19]

---

[19] Plaintiff also moved in the alternative for summary judgment on its claim for contributory copyright infringement against Jorge Mendez. ECF No. 111 at 24-25. While the Court recommends that Jorge Mendez be found liable for direct infringement and need not reach the contributory infringement claim, the Court notes that, even if he were not directly liable, there is more than sufficient evidence to find Jorge Mendez contributorily liable for copyright infringement. "A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes, or materially contributes to infringing conduct of another." *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-CV-1651, 2017 WL 5479611, at *4 (N.D. Tex. Nov. 15, 2017) (quoting *Alcatel USA, Inc. v. DGI Tech., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999)). Jorge Mendez does not dispute that he knew Tesla Mendez purchased MBLEx questions for use in her test preparation companies. J. Mendez Dep. 5:23-6:2, 24:8-12, ECF No. 111-12; Ex. D at 11, ECF No. 111-14. In addition, Plaintiff produced substantial evidence that Jorge Mendez materially contributed to the infringement in numerous ways. He was listed as a director for MMTC-CA in filings with the California Secretary of State in 2016; in that capacity Jorge Mendez was a signatory to MMTC-CA's bank account and had the authority to sign company checks; he allowed MMTC-CA to operate out of his business premises at one point; Jorge Mendez loaned $10,000 to MMTC-CA through his company, Five Star Circuit Breaker Inc.;

### 3. Defendants' Counterarguments Fail.

Defendants' counterarguments to Plaintiff's motion for copyright infringement are that (1) the MBLEx questions were easily accessible and widely used by many Chinese-language MBLEx test preparation programs, and (2) Defendants' infringement was not intentional or willful. ECF No. 116 at 17-20. Defendants assert they believed that, because MBLEx questions were widely used and other companies openly advertised their use of MBLEx questions, it was permissible for them to use the questions in their own test preparation program.[20] Defendants further argue that the Federation did nothing to prevent the use of MBLEx questions in test preparation programs, did not sue any other companies in California or Texas for infringement, and thus had a policy of permitting their use.[21]

---

he and Tesla Mendez jointly purchased property in Houston for use as MMTC-TX's office; Jorge Mendez took the MBLEx twice; and, the first time he took the test, he brought a camera into the exam with him. T. Mendez Dep. 41:1-14, 119:16-120:5, 140:8-16, ECF No. 118-2; T. Mendez Dep. 41:1-42:1, ECF No. 118-2; J. Mendez Dep. 9:15-10:1, 10:20-22, 11:12-16, 13:20-14:9, 19:2-3, 22:13-23:1, ECF No. 111-12; Ex. D at 4-7, 13, ECF No. 111-14; Ex. E at 2, ECF No. 111-15; Persinger Decl. ¶¶ 47, 49, ECF No. 111-1; T. Mendez Decl. ¶¶ 64, 68, ECF No. 117. Defendants' only counterarguments reiterate those made in response to Plaintiff's direct infringement claim, discussed *infra* at Section III.A.3. Defendants did not point to any evidence creating a genuine dispute of fact.

[20] ECF No. 116 at 17-18; T. Mendez Decl. ¶¶ 21-23, 25, 27, 30, 33-34, ECF No. 117; T. Mendez Dep. 108:24-109:17, 146:16-147:7, 149:24-150:24, ECF No. 118-2; J. Mendez Decl. ¶ 3, ECF No. 121.

[21] ECF No. 116 at 18; T. Mendez Decl. ¶¶ 26-27, 30, 32, 44, ECF No. 117; J. Mendez Decl. ¶ 3, ECF No. 121.

### a. Defendants' argument that MBLEx questions were easily accessible has no merit.

Defendants cite no case law to establish that publicly accessible material cannot be entitled to copyright protection or that these allegations negate any element of Plaintiff's claim.[22] To the contrary, publicly accessible materials can still be subject to copyright protection. *See, e.g., Flowserve Corp.*, 2011 WL 1527951, at *5 (finding copyright infringement where defendant copied image that was posted on plaintiff's publicly accessible website and advertising materials). Furthermore, Plaintiff produced evidence that it went to great lengths to protect the security of exam questions.[23]

During oral argument, Defendants argued that Plaintiff must demonstrate unauthorized copying to prevail on its claim.[24] March 22, 2019 Oral Argument ("Oral Arg.") at 11:55, 12:03-12:04. Defendants argued that they produced evidence

---

[22] This argument appears more relevant to Plaintiff's misappropriation of trade secret claims, which are not at issue. *See* ECF Nos. 111, 116 at 22, 125 at 10.

[23] Plaintiff's Executive Director explained in an affidavit that the Federation requires test takers to agree multiple times to keep exam content confidential, does not release exam questions, maintains the database of questions in a secure environment, requires employees and writers who develop questions to be bound by confidentiality agreements, requires test takers to present two forms of identification and undergo biometric security procedures, and does not permit test takers to bring personal items into the testing room. Persinger Decl. ¶¶ 20-32, 34, 37-43, ECF No. 111-1; Ex. A-2, ECF No. 111-3; Ex. A-3, ECF No. 111-4; Ex. A-4, ECF No. 111-5; Ex. A-5, ECF No. 111-6; Ex. A-6, ECF No. 111-7; Ex. A-7, ECF No. 111-8; Ex. A-8, ECF No. 111-9.

[24] *See*, *e.g.*, *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 589 (5th Cir. 2015), *cert. denied*, 136 S.Ct. 592 (2015) ("To prevail on a copyright infringement claim, a plaintiff must show (1) ownership of a valid copyright and (2) unauthorized copying.") (quoting *Peel & Co., Inc. v. Rug Mkt.*, 238 F.3d 391, 394 (5th Cir. 2001)).

creating a reasonable inference that Plaintiff waived its right to enforce the copyright or consented to Defendants' conduct. *Id*. at 11:55-12:03, 12:10. In addition, even though Defendants did not have a license authorizing them to use MBLEx questions, Defendants reasonably believed their use of the questions was not unauthorized because Plaintiff failed to sue thirty similar companies in California or Texas, other than Defendants. *Id*. However, Defendants cite no case law that this is a valid defense to copyright infringement and ask this Court to be a court of first impression. *Id*. at 11:55-12:04, 12:10, 12:33.

Defendants' argument is without legal or factual support. Contrary to this argument, courts have held that copyright owners do not have to sue every potential infringer to preserve their rights. *See*, *e.g.*, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1124-25 (C.D. Cal. 2007) (rejecting argument that plaintiff waived right to enforce copyright because plaintiff allowed others to infringe, on the basis that there is no authority requiring a copyright holder "to pursue either all infringers or none at all" and this "would create a rule whereby Plaintiffs would be barred from suing any of the millions upon millions of direct infringers … unless all were sued."). Furthermore, Plaintiff produced uncontroverted evidence that it brought lawsuits against two other MBLEx preparation companies in New York and New Jersey for selling MBLEx questions. Persinger Decl. ¶ 33, ECF No. 111-1.

20

Further, Defendant failed to produce evidence that other similar test preparation companies did not have a license or other authorization from Plaintiff to use MBLEx questions. Oral Arg. at 12:05-12:07. Defendants also produced no competent summary judgment evidence that Plaintiff had personal knowledge that other companies were offering test preparation programs using actual MBLEx questions. *Id*. at 11:56-11:57. The Court notes that Tesla Mendez explained in her declaration that several Chinese language MBLEx test preparation services advertised the use of actual MBLEx questions and attached several such advertisements. T. Mendez Decl. ¶¶ 2-22, 25, ECF No. 117; Ex. A-R at 1-106, ECF No. 117-1. However, the advertisements are in Mandarin Chinese and were not translated. *See*, *e.g.*, *Ureteknologia De Mexico S.S. De C.V. v. Uretek (USA), Inc.*, No. H-16-2762, 2018 WL 4680603, at *10 (S.D. Tex. Sept. 28, 2018) (sustaining objection to summary judgment evidence that was not translated from foreign language into English because material must be accessible to the court and litigants) (citing *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 579 (2012) (Ginsburg, J., dissenting)). Although Tesla Mendez attested to their authenticity and some of their content in her declaration (and Plaintiff did not object), the lack of translation makes it difficult for the Court to determine that Plaintiff was aware of the advertisements or that the advertisements specifically said the companies used real MBLEx questions, rather than simply advertised MBLEx preparation courses. *See also* Oral

Arg. 12:35-12:36.

In addition, to the extent Defendants attempt to assert an estoppel defense, assuming it applies in this context, they failed to produce evidence establishing the elements of estoppel. *See*, *e.g.*, *Paramount Pictures Corp. v. Carol Pub. Group*, 11 F. Supp. 2d 329, 337-38 (S.D.N.Y. 1998) (court held defendant failed to establish essential elements and estoppel was inapplicable to the copyright claim based on plaintiff's failure to sue other potential copyright infringers because, *inter alia,* "there is no legal duty to instigate legal proceedings," and defendants cannot rely solely on plaintiff's conduct toward others). Moreover, the District Judge already denied Defendants' request to assert estoppel and unclean hands defenses in an Amended Answer as untimely. *See* Order, ECF No. 115; *see also* Defs.' Mot. to Amend Answer, ECF No. 104 (seeking leave to amend answer to include estoppel and unclean hands defenses on the basis that Plaintiff permitted other similar test preparation companies to operate, that MBLEx test questions were widely available, and therefore Defendants reasonably believed they were permitted to use MBLEx questions).[25]

---

[25] Defendants also argue that Plaintiff engaged in discrimination by not offering the MBLEx in languages other than English or Spanish. ECF No. 116 at 9-10, 13. Defendants provided no authority that this is a valid defense to copyright infringement. Furthermore, in September 2018, Defendants attempted to file counterclaims including the same allegation, ECF No. 75, but the District Judge struck Defendants' counterclaims as untimely, ECF No. 84. In November 2018, Defendant sought leave to file their counterclaims late, ECF No. 85, and the District Judge again denied the request, ECF No. 96. In December 2018, when Defendants filed their motion to amend their Answer, they again sought to include allegations regarding discrimination as an affirmative

### b. *Defendants' argument that they did not willfully infringe Plaintiff's copyright fails.*

Defendants' second argument that they did not willfully infringe is also without merit. "[C]opyright infringement is a strict liability tort" and "plaintiffs do not need to prove a defendant's mental state to prosecute a copyright claim." *Guzman v. Hacienda Records & Recording Studio, Inc.*, No. 6-12-CV-42, 2014 WL 6982331, at *5 n.9 (S.D. Tex. Dec. 9, 2014) (citing *Simon*, 95 F. Supp. 2d at 1087), *aff'd*, 808 F.3d 1031 (5th Cir. 2015); *see also Miller*, 1991 WL 212181, at *4 (defendant's "claim that he did not intend to violate [plaintiff's] copyright is no defense to infringement…."). "Even an innocent infringer is liable for infringement." *Cullum v. Diamond A Hunting, Inc.*, No. SA-07-CV-76, 2010 WL 3655863, at *3 n.35 (W.D. Tex. Sept. 13, 2010) (quoting *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110, 1113 (2d Cir. 1986)), *report and recommendation adopted in part and rejected in part on other grounds*, 2010 WL 5817541 (W.D. Tex. Dec. 22, 2010). Willfulness is only relevant to the court's discretionary determination of whether to enhance or reduce damages after a plaintiff establishes liability.[26] *See* 17 U.S.C. § 504(c)(2). Thus, this argument does

---

defense. ECF No. 104. The Court denied the Defendants' request for a third time. ECF No. 115. Even if this were a valid defense to copyright infringement, Defendants are precluded from asserting it. Defendants also filed a request for judicial notice of facts related to this alleged defense, ECF No. 123, which, for the same reasons, is denied.

[26] Other than for costs and attorneys' fees, neither party moved for summary judgment on the issue of damages or other remedies such as injunctive relief.

not defeat Plaintiff's entitlement to summary judgment on its claim for copyright infringement. To the extent Defendant argues that the Plaintiff only alleged a claim for willful infringement, this argument is without merit.

### B. Individual Defendants Are Personally Liable For Copyright Infringement.

Plaintiff moved for summary judgment to hold Tesla Mendez and Jorge Mendez personally liable. ECF No. 111 at 21-24. "[A]ll participants in copyright infringement are jointly and severally liable as tortfeasors." *Broad. Music, Inc. v. Armstrong*, No. EP-13-CV-32, 2014 WL 2440556, at *8 (W.D. Tex. May 30, 2014) (quoting *Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257, 1262 (S.D. Tex. 1989)). A corporate officer may be held jointly and severally liable with the corporation if the officer "(1) had the right and ability to control the infringing activity; and (2) had a direct financial interest in that activity." *Id*. (quoting *EMI April Music, Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 623 (N.D. Tex. 2008)).

#### 1. Tesla Mendez.

These elements are easily satisfied as to Tesla Mendez. She was the founder and owner of MMTC-CA and MMTC-TX. T. Mendez Dep. 39:21-40:1, 43:6-12, 68:22-24, ECF No. 118-2; T. Mendez Decl. ¶¶ 53-54, ECF No. 117. Aside from Jorge Mendez's director position, Tesla Mendez was the sole officer, director, and shareholder. T. Mendez Dep. 40:15-25, ECF No. 118-2; T. Mendez Decl. ¶¶ 49, 52,

ECF No. 117. "The Fifth Circuit has previously held that a sole shareholder and president of a corporation had 'the ultimate authority to police the conduct of' his employees." *Univ. Music-MGB Songs v. Clayton's Beach Bar & Grill L.L.C.*, No. 17-CV-16, 2017 WL 1753497, at \*3 (S.D. Tex. Apr. 17, 2017) (citing *Broad. Music, Inc. v. Hobi, Inc.*, 20 F.3d 1171, 1994 WL 144812, at \*2 (5th Cir. 1994)), *report and recommendation adopted*, 2017 WL 1710628 (S.D. Tex. May 3, 2017).[27]

In addition, Tesla Mendez obtained the MBLEx questions specifically to develop test preparation programs using the actual questions. T. Mendez Decl. ¶¶ 21, 23-24, 65, ECF No. 117; T. Mendez Dep. 92:25-93:15, 108:24-111:11, ECF No. 118-2; J. Mendez Dep. 24:8-12, ECF No. 111-12; Ex. D at 11, ECF No. 111-14. She was responsible for handling MMTC-CA's and MMTC-TX's finances and financial records. T. Mendez Dep. 3:1-9, ECF No. 125-3. Overall, the evidence shows Tesla Mendez took the lead in directing the operations of MMTC-CA and MMTC-TX.

Tesla Mendez also had a financial interest as the sole shareholder. She earned a salary and commissions. T. Mendez Dep. 58:14-59:14, ECF No. 118-2. Tesla

---

[27] *See also Broad. Music, Inc. v. Olivia's Corp.*, No. 3:13-CV-606, 2014 WL 12603108, at \*3 (N.D. Tex. June 19, 2014) (holding sole owner jointly and severally liable with corporation); *Armstrong*, 2014 WL 2440556, at \*8 (holding partner/owner/operations manager jointly and severally liable with corporation); *Red Giant, Inc. v. Molzan, Inc.*, No. H-07-2657, 2009 WL 2242349, at \*5-6 (S.D. Tex. July 24, 2009) (holding principal stockholder jointly and severally liable with corporation).

Mendez and Jorge Mendez jointly purchased and still own a property in Texas that was used as MMTC-TX's office, but took the loan in MMTC-TX's name. *Id.* 67:21-68:14, 70:16-23; T. Mendez Dep. 6:8-7:22, ECF No. 125-3; Ex. D at 4-5, ECF No. 111-14.

### 2. Jorge Mendez.

These elements are likewise met as to Jorge Mendez. He was listed as the only director for MMTC-CA, other than Tesla Mendez, for some period of time in the corporate filings with the California Secretary of State. T. Mendez Dep. 41:1-14, ECF No. 118-2; Ex. E, ECF No. 111-15. He was a signatory to MMTC-CA's bank account and had authority to sign company checks. T. Mendez Dep. 41:1-14, ECF No. 118-2; Ex. D at 5, 6, ECF No. 111-14. More importantly, he actively participated in the unlawful distribution of MBLEx questions when he materially contributed to his wife's business, including by wearing a video camera into the testing center.[28] Plaintiff therefore established that Jorge Mendez had the right and ability to control the infringing activities. *See, e.g.*, *Sanchez v. Hacienda Records & Recording Studio, Inc.*, No. H-11-3855, 2013 WL 529950, at *8 (S.D. Tex. Feb. 11, 2013) (denying defendants' motion for summary judgment on liability against individual defendants because court could not find that defendants had no ability or right to supervise infringing activities in closely held, family-run business).

---

[28] *See supra*, n.19.

26

Even though Jorge Mendez did not earn a salary from MMTC-CA or MMTC-TX, he had a financial interest in the corporate Defendants because when MMTC-CA was first established, he allowed MMTC-CA to operate out of his business premises and loaned $10,000 to MMTC-CA through his company. T. Mendez Dep. 41:15-42:1, ECF No. 118-2; Ex. D at 7, ECF No. 111-14. Jorge Mendez also benefited financially from the corporate Defendants, which funded a personal trip for him in 2016 to visit his wife in Texas. Ex. D at 4, ECF No. 111-14. He further testified that the income MMTC-CA and MMTC-TX generated appeared on his and his wife's joint income tax returns. J. Mendez Dep. 20:14-18, 25:13-16, 29:25-30:5, ECF No. 118-1. Plaintiff does not need to show that Defendants "actually made money by infringing on the copyright, simply that [their] financial interests were implicated." *Univ. Music-MGB Songs*, 2017 WL 1753497, at *3 (citing *Hobi, Inc.*, 20 F.3d at *2); *see also Hobi, Inc.*, 20 F.3d at *2 (finding defendant had a financial interest in the activities, "regardless of whether he was making a profit or losing money on the venture.").

Notably, Defendants make no argument in response to Plaintiff's motion as to joint and several liability or to Plaintiff's cited case law establishing that all participants in copyright infringement are jointly and severally liable.[29] Thus,

---

[29] Instead, Defendants included a cross motion for summary judgment with their opposition, arguing that Plaintiff cannot pierce the corporate veil of MMTC-CA or MMTC-TX to hold its officers liable. ECF No. 116 at 26-29; *see infra*, Section IV.

Defendants failed to create a genuine dispute of material fact as to this issue and summary judgment should be granted for Plaintiff.

### C. Plaintiff Is Entitled To Summary Judgment On Its Breach Of Contract Claim.

Plaintiff moved for summary judgment on its breach of contract claim against Tesla Mendez and Jorge Mendez for breaching confidentiality obligations and providing inaccurate information on their registration applications, and also against Jorge Mendez for bringing a camera into the exam. ECF No. 111 at 25-29. "Under Texas law, the elements of a breach of contract claim are: '(1) a valid contract, (2) the plaintiff performed or tendered performance[,] (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach.'" *Page v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 272, 275 (5th Cir. 2015) (quoting *Doss v. Homecomings Fin. Network, Inc.*, 210 S.W.3d 706, 713 (Tex. App.—Corpus Christi 2006, pet. denied)).

### 1.  The parties entered into valid contracts.

Plaintiff produced evidence establishing that when candidates apply for and take the MBLEx, test takers enter into valid contracts agreeing to treat the exam as confidential, to report any suspected violations of confidentiality, to not disclose or reproduce any exam questions, to provide the name of the massage therapy school

they attended, to attest they have the requisite massage therapy education,[30] and not

to bring prohibited items into the room.[31] The Federation also repeatedly reminded

test takers of these obligations:

- At the time a candidate registers to take the MBLEx, he or she is required to fill out an application that contains a confidentiality and security agreement and requires them to verify their education. Persinger Decl. ¶¶ 34, 47, 49, 50, ECF No. 111-1; Ex. A-2, ECF No. 111-3; Ex. A-3, ECF No. 111-4.

- At the time a candidate registers to take the MBLEx, he or she is also required to review and agree to the provisions of the MBLEx Candidate Handbook that included similar confidentiality language as the application. Persinger Decl. ¶¶ 37-38, ECF No. 111-1; Ex. A-4, ECF No. 111-5. Applicants were warned that they must provide accurate information on their application and may not bring prohibited items into the testing room, including recording devices. Ex. A-4, ECF No. 111-5.

- The Federation makes available on its website an instructional video that informs test takers the exam is secure and confidential. Persinger Decl. ¶ 39, ECF No. 111-1; Ex. A-5, ECF No. 111-6.

- When test takers' applications are approved, they receive an "Authorization to Test," which reminds them of the confidentiality requirements, including that the exam materials are protected under the copyright laws. Persinger Decl. ¶ 40, ECF No. 111-1; Ex. A-6,

---

[30] Candidates are required to complete 500 hours of massage therapy training before they can take the MBLEx and obtain a massage license. T. Mendez Dep. 26:2-19, 49:13-21, ECF No. 118-2.

[31] The interpretation of an unambiguous contract is a legal question for the court. *See Total E&P USA, Inc. v. Marubeni Oil & Gas (USA), Inc.*, No. 4:16-CV-2671, 2018 WL 4599842, at *5 (S.D. Tex. June 28, 2018) (citing *Boudreaux v. Unionmutual Stock Life Ins. Co. of Am.*, 835 F.2d 121, 123 (5th Cir. 1988)), *report and recommendation adopted*, 2018 WL 4042612 (S.D. Tex. Aug. 24, 2018). Neither party contends the contracts are ambiguous. Under general Texas rules of contract interpretation, in an unambiguous contract, "we construe [its terms] according to the plain meaning of their express meaning and enforce them as written." *Lutfak v. Gainsborough*, No. 1-15-1068-CV, 2017 WL 2180716, at *3 (Tex. App.—Houston [1st Dist.] May 18, 2017, no pet.) (citing *Chapman v. Abbot*, 251 S.W.3d 612, 616-17 (Tex. App.—Houston [1st Dist.] 2007, no pet.)).

ECF No. 111-7.

- When test takers arrive at the testing site, they must review and agree to the "Professional & Regulatory Candidate Rules Agreement," reminding them of the confidentiality obligations and of the list of items prohibited in the exam room, including all electronic devices. Persinger Decl. ¶ 41, ECF No. 111-1; Ex. A-7, ECF No. 111-8.

- Finally, once seated at the computer where the MBLEx is administered, each test taker must again review and agree to the confidentiality terms displayed on the computer screen prior to beginning the exam. Persinger Decl. ¶ 42, ECF No. 111-1; Ex. A-8 at 2, 3, ECF No. 111-19.

This evidence establishes that both Tesla Mendez and Jorge Mendez agreed to these terms when they applied to sit for the MBLEx and each time they sat for the exam. Neither Defendant makes any argument that these contracts were invalid or ambiguous, or that they did not in fact enter into these contracts.

### 2.  Plaintiff tendered performance.

Plaintiff's evidence establishes that it performed on the contracts with Defendants. In contrast, Defendants make no argument and present no evidence that the Federation in any way failed to tender performance.

### 3.  Defendants breached the contracts.

Plaintiff presented sufficient evidence to establish that Tesla Mendez and Jorge Mendez breached the contracts' terms regarding (1) confidentiality, (2) providing accurate information about their education, and (3) not bringing personal items into the testing room.

### a.  Defendants violated the contracts' confidentiality provisions.

It is undisputed that Tesla Mendez accessed actual test questions through a test preparation course before she first took the MBLEx. T. Mendez Dep. 19:12-22:13, ECF No. 111-13. It is undisputed that Tesla Mendez sought out for purchase, reproduced, and distributed MBLEx questions and answers through MMTC-CA and MMTC-TX to hundreds of test takers.[32] It is further undisputed that Jorge Mendez knew his wife purchased actual MBLEx questions from a third party and used them in the test preparation course through MMTC-CA and MMTC-TX.[33] Jorge Mendez was a director of MMTC-CA for at least some period of time, but more significantly he facilitated the use and distribution of MBLEx questions when he funded his wife's business and provided facilities for her to run her business.[34] Moreover, he participated in the scheme when he took the test wearing a video camera into the test site with the purpose of recording the activities there. Tesla Mendez and Jorge Mendez failed to report violations of the confidentiality terms and facilitated other students in obtaining advance access to the questions. Thus, Plaintiff established that Tesla Mendez and Jorge Mendez breached the confidentiality terms they agreed to,

---

[32] T. Mendez Decl. ¶ 65, ECF No. 117; T. Mendez Dep. 91:22-92:4, 92:25-94:13, 95:9-96:8, 96:25-98:9, 99:25-101:6, 108:24-111:11, 116:21-117:7, 120:22-121:15, 136:4-6, ECF No. 118-2; J. Mendez Dep. 24:8-12, ECF No. 111-12; Ex. D at 11, 13, ECF No. 111-14.

[33] J. Mendez Dep. 5:23-6:2, 24:8-12, ECF No. 111-12; Ex. D at 11, ECF No. 111-14.

[34] *See supra*, n.19.

and Defendants failed to create a genuine dispute of fact.

### b. Defendants provided inaccurate information on their MBLEx applications.

Plaintiff provided evidence that Tesla Mendez and Jorge Mendez provided inaccurate information about their education on their application forms. Even though Tesla Mendez passed the MBLEx the first time she took it, she applied to take it a second time. Persinger Decl. ¶¶ 45-46, ECF No. 111-1; T. Mendez Dep. 118:6-119:15, ECF No. 118-2. On Tesla Mendez's second application to retake the MBLEx, she indicated that she attended Angeles College for massage and bodywork. Persinger Decl. ¶ 46, ECF No. 111-1. In her deposition, however, Tesla Mendez testified that she only attended California Vocational Cosmetology College, which she listed on her first MBLEx application. *Id*. ¶ 44; T. Mendez Dep. 22:22-28:12, ECF No. 118-2; Ex. A-2, ECF No. 111-3.

On both of Jorge Mendez's applications, he indicated that he attended California Vocational Cosmetology College. Persinger Decl. ¶¶ 47, 49, ECF No. 111-1. However, in his deposition he conceded he never attended that institution or obtained any other massage therapy education. J. Mendez Dep. 3:11-23, 26:8-10, ECF No. 111-12.

Tesla Mendez and Jorge Mendez provided no contrary evidence that they in fact attended these institutions, or that they did not list these institutions on their applications. Thus, Plaintiff established that Tesla Mendez and Jorge Mendez

32

breached the contract terms that required them to provide accurate information about their education.

### c. *Jorge Mendez breached the contracts by bringing a camera into the testing room.*

Tesla Mendez and Jorge Mendez attempt to create a dispute of fact as to this breach of contract claim, alleging they did not *intend* to record any exam questions because they already had the questions, Jorge Mendez only recorded the check in procedures, and they only used the portion of the recording that included the exam check in procedures before entering the exam room.[35] Tesla Mendez purchased the camera for that purpose. T. Mendez Dep. 119:16-121:15, ECF No. 118-2.

However, regardless of whether the camera recorded only the check in process or actual test questions, it is undisputed that Jorge Mendez wore the camera into the testing facilities, and, while it was recording, into the exam room and did not remove it or turn it off.[36] Both Defendants testified that they were aware Plaintiff prohibited

---

[35] ECF No. 116 at 26; J. Mendez Dep. 10:2-11:11, ECF No. 111-12; T. Mendez Decl. ¶¶ 64, 65, 67, 68, ECF No. 117; Ex. D at 13, ECF No. 111-14; T. Mendez Dep. 120:16-121:15, 140:8-142:6, ECF No. 118-2. Notably, this is the only dispute of fact Defendants allege exists with regard to Plaintiff's breach of contract claim. The only other argument Defendants make regarding Plaintiff's breach of contract claim is that it is preempted by both the California Uniform Trade Secrets Act and the Texas Uniform Trade Secrets Act, which preempt claims based on the same facts underlying claims for trade secret misappropriation. ECF No. 116 at 23-25. However, this argument is without merit because these statutes clearly state they do not apply to contract claims. *See* CAL. CIV. CODE § 3426.7(b) ("This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret."); TEX. CIV. PRAC. & REM. CODE § 134A.007(b) ("This chapter does not affect: (1) contractual remedies, whether or not based upon misappropriation of a trade secret.").

[36] T. Mendez Dep. 119:16-21, ECF No. 118-2; J. Mendez Dep. 9:15-10:1, 11:12-16, ECF No. 111-12; Ex. D at 13, ECF No. 111-14; T. Mendez Decl. ¶¶ 64, 68, ECF No. 117; Persinger Decl. ¶ 48,

test takers from taking personal items into the testing room, since both took the exam and test takers are required to put all personal belongings in a locker. *Id*. 139:1-10, 150:25-151:10; J. Mendez Dep. 7:10-18, 18:4-19:1, 20:4-9, 20:21-21:6, 22:2-4, ECF No. 111-12. Jorge Mendez testified he was aware recording devices could not be brought into the testing room. J. Mendez Dep. 20:21-21:6, ECF No. 111-12. Plaintiff established this constitutes a breach of the contracts and Defendants failed to create a genuine dispute of material fact.

### 4. Plaintiff was harmed by the breach.

Regarding the fourth element, Plaintiff has produced sufficient evidence that Tesla Mendez and Jorge Mendez's breach compromised the integrity of the exam. Persinger Decl. ¶¶ 8, 10, 21, ECF No. 111-1. Plaintiff must retire the compromised questions and incur substantial time and expense to develop new ones.[37] *Id*. ¶¶ 9, 12-18. Accordingly, summary judgment should be granted for Plaintiff on its breach of contract claim against both Tesla Mendez and Jorge Mendez.

---

ECF No. 111-1; Ex. A-9, ECF No. 111-10. Notably, Jorge Mendez testified that the device only had one setting, and while it was on, recorded video. J. Mendez Dep. 13:20-14:9, ECF No. 111-12. Jorge Mendez put his wallet into a locker before entering the exam room, but not the recording device. *Id*. 18:20-19:3. When Jorge Mendez entered the testing room, the recording device was still on his shirt. *Id*. 22:17-22. He did not turn it off. *Id*. 22:23-23:1.

[37] "The reuse of test questions from one administration to another is a common practice among some standardized testing organizations." *Nat'l Conf. of Bar Exam'rs v. Saccuzzo*, No. 3-CV-737, 2003 WL 21467772, at *3 (S.D. Cal. June 10, 2003) (citations omitted).

### D. Costs And Attorneys' Fees.

Plaintiff also requests an award of costs and attorneys' fees under the federal Copyright Act. ECF No. 111 at 29-30. The Copyright Act gives the district court discretion to award "full costs" and "a reasonable attorney's fee to the prevailing party" in a copyright infringement action. 17 U.S.C. § 505; *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1983 (2016). In deciding whether to award attorneys' fees, the court may consider several non-exclusive factors including frivolousness, motivation, objective unreasonableness of the losing party's position, and considerations of compensation and deterrence. *Kirtsaeng*, 136 S.Ct. at 1985, 1988-89 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). The award should promote the purposes of the Copyright Act. *Hunn*, 789 F.3d at 589. "[A]n award of attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely." *Id.* at 588-59 (quoting *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008)).

Defendants do not dispute that a prevailing party in a copyright action is entitled to attorneys' fees. ECF No. 116 at 26. Moreover, the copyright infringement in this case, willful or not, "harmed the public as well as [Plaintiff]." *Multistate Legal Studies, Inc.*, 458 F. Supp. 2d at 262 (awarding attorney's fees). The Federation has a compelling interest to protect the integrity of the MBLEx and to ensure the safety of future massage and bodywork practitioners' clients. "By exposing its students to

35

the questions likely to appear on the [exam], [Defendants] undermined the integrity of the [] examination, possibly causing the admission of unqualified applicants." *Id.*; *accord Nat'l Bd. of Med. Exam'rs*, 2011 WL 7615071, at *11 (awarding attorney's fees). The need to deter such infringement is vital. *Nat'l Bd. of Med. Exam'rs*, 2011 WL 7615071, at *11. Accordingly, Plaintiff should be awarded reasonable costs and attorneys' fees upon submission of affidavits setting forth Plaintiff's costs and attorneys' fees.[38]

## IV.
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants moved for partial summary judgment on its defenses to Plaintiff's claims of alter ego, undercapitalization, or other corporate veil piercing claims. ECF No. 116 at 26-29. Plaintiff contends that Defendants' cross motion should be denied because it is untimely, it is moot because Plaintiff does not need to pierce the corporate veil, and Plaintiff can establish a genuine dispute of material fact. ECF No. 125 at 10-14. The Court agrees with Plaintiff on the first argument regarding timeliness and need not reach Plaintiff's other arguments.

On December 20, 2018, the parties filed a joint request to modify the deadlines

---

[38] Plaintiff filed a motion for partial summary judgment and did not move for summary judgment on several of its claims. *See supra*, n.8. Plaintiff's entitlement to costs and attorneys' fees arises under the Copyright Act to the extent they relate to Plaintiff's copyright infringement claim. *See* 17 U.S.C. § 505.

for dispositive motions. ECF No. 105. The District Judge granted the request, extending the dispositive motion deadline to January 4, 2019 and the response deadline to February 1, 2019. ECF No. 107. On February 1, 2019, Defendants filed a cross motion for partial summary judgment embedded in their opposition to Plaintiff's motion for partial summary judgment. ECF No. 116. "Rule 16(b) provides that once a scheduling order has been entered, it 'may be modified only for good cause and with the judge's consent.'" *Spangler v. Mourik, L.P.*, No. H-16-349, 2017 WL 3412117, at *3 (S.D. Tex. Aug. 8, 2017) (quoting *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009)). In addition, Rule 6(b)(1) permits post-deadline extensions only "*on motion made* after the time has expired if the party failed to act because of excusable neglect." FED. R. CIV. P. 6(b)(1) (emphasis added).

Defendants filed their cross motion for summary judgment nearly a month after the dispositive motion deadline without a motion seeking leave to amend the operative Scheduling Order or offering any explanation of good cause or excusable neglect for the delay. *See Spangler*, 2017 WL 3412117, at *4 (denying plaintiff's cross motion for summary judgment that was filed at the same time as opposition to defendant's motion for summary judgment three weeks beyond due date without moving to amend the Scheduling Order or showing good cause). Thus, Defendants' cross motion for summary judgment is untimely and should be denied.

# V.
## CONCLUSION

The Court orders that Defendants' request for judicial notice, ECF No. 123, is **DENIED**.

In addition, the Court recommends that:

- Plaintiff's motion for partial summary judgment, ECF No. 111, should be **GRANTED** against Defendants Mendez Master Training Center, Inc. and MMTC Texas, Inc., as well as Tesla Mendez and Jorge Mendez, individually.

- Defendant's cross motion for partial summary judgment, ECF No. 116, should be **DENIED**.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).**

Signed at Houston, Texas, on March 26, 2019.

_____
Dena Hanovice Palermo
United States Magistrate Judge